Case number 19-3113 Island Creek Coal Company v. Larry Young et al. Or arguments to be 15 minutes for petitioner, 15 minutes to be shared by respondents. Mr. Jeffrey Robert Sukup for the petitioner. You may proceed. State please the court. Jeffrey R. Sukup for the petitioner, Island Creek Coal Company. I reserve three minutes for rebuttal time. In our term of greening codes, this court held a claimant proves he has legal pneumoconiosis, which regulations define as a chronic lung disease significantly related to or substantially aggravated by coal mine dust, merely by showing his disease is due at least in part to coal dust. Yet courts have held where the employer has the burden to prove the absence of pneumoconiosis, as in this case, this at least in part standard, which is also known as the rule out standard, does not apply. Rather, the employer proves the absence of pneumoconiosis by proving the claimant's disease is not significantly related to or substantially aggravated by coal mine dust, as the regulation requires. The ALJ here instead applied the arch on the green standard for how a claimant proves pneumoconiosis as the employer's standard for disproving pneumoconiosis. In other words, that coal dust did not contribute, excuse me, did not contribute at least in part to disease. This is prejudicial legal error and requires the benefits decision be vacated and remanded for assessment of the evidence under the correct legal standard. Now, basically, there are three questions that are in dispute by the parties in this case. The first is what standard did the ALJ apply to the employer's evidence? The second is why is the standard, whatever it is, incorrect? And three, why does the application of the standard matter in this case? Well, turning to the first question, the standard the ALJ applied is, in fact, the arch on the green standard for how a claimant proves pneumoconiosis. And you can see that from the ALJ's decision. And I'm referring to the Joint Appendix here. On Joint Appendix page 343, the ALJ discusses the arch on the green standard. It's in the third... Counselor? Yes. Counselor Judge Sutton, so post arch on the green, what's the best case you have from the Sixth Circuit, ideally published case, that says these are distinct standards? Yes. One second, please. Well, to be honest, there's not a whole lot of discussion in the Sixth Circuit about these standards because they fleshed out more in detail the distinction between the rule-out standard for rebutting pneumoconiosis and the substantially contributing cause or significantly relation to cause standard. And I've cited those primarily in my reply brief. And they're on pages... And basically, those cases are, there's Big Brands Resources v. Ogle, Lane Howell Coal Company v. Director. If you don't have Sixth Circuit cases, we'll deal with that later. Maybe just talk through... You know, I'm sure you've done a lot more of these cases than the three of us have. Just talk through... I mean, there is an intuition to treating them the same and maybe help us understand why we should not follow that intuition. Sure. Well, the reason why I don't think you should apply the arch on the green, at least in part, standard to an employer's burden to rebut the presence of legal pneumoconiosis is because the arch on the green, at least in part, standard is the functional equivalent of what's called the rule-out standard. The rule-out standard means that an employer must show that coal mine dust did not contribute, at least in part, to a claimant's disabling impairment. Now, everybody, as far as I can tell, everybody in this case agrees that that rule-out standard applies when the operator's trying to rebut the 15-year presumption under what's called the second prong, the proving pneumoconiosis didn't cause disability. Well, what's applying here is the first prong of the 15-year presumption where an employer proves that pneumoconiosis is absent. And the director agrees in her response brief that the rule-out standard does not apply to that first prong. Okay? That only applies to the second prong. In this case, we are proceeding entirely on rebutting under the first prong. That's what's at stake here. We can't rebut under the second prong under the evidence submitted here. So what the ALJ did was he applied... By applying the arch inapplicable rule-out standard to the first rebuttal prong, the pneumoconiosis is absent prong. And by doing that, that turns the case law, you know, discussing the differential rebuttal standards between the two prongs upside down. It's applying the rule-out standard to both the pneumoconiosis presence rebuttal prong and the disability causation rebuttal prong. And... Help me out. Help correct my misapprehensions here. But if you go up at 60,000 feet and look at this problem, you say to yourself, there are quite a few presumptions here in both directions which help the minor. Okay? There's no doubt about that. The current regime is very helpful to the minor. And so you're just asking yourself, how light is this standard? And I kind of thought it was light in both directions. And I guess light in the sense of helpful to the minor and difficult for you. I mean, from 60,000 feet, that's the way it seems to me. And so I find myself wondering how much of a difference, you know, in no part or in small part, I find myself really wondering how much these words, how much work they actually do when the real point is you have a pretty heavy presumption in favor of a finding of either clinical or legal pneumoconiosis. Does that make the question make sense? And if so, I'd love to hear it. You certainly have a heavy burden on the employer's part when it comes to the rule-out standard. I mean, that's beyond question. And it is beyond question that that particular heavy standard does apply when I'm trying, I as the employer, am trying to prove that pneumoconiosis didn't contribute to disability. Okay? But that's only one way of rebutting the 15-year presumption. The other way, and that's the one at stake here, is proving that pneumoconiosis is absent. And at the very least, in Fourth Circuit cases and by the director's own briefs and regulations, that particular rule-out very heavy burden standard does not apply to rebutting the presumption by proving pneumoconiosis is absent. What applies there is this substantially contributing or significantly related to standard. And, you know, you can tell by the very wording that that's a standard. Does that address your question, Your Honor? Maybe. Maybe. So is there no distance between rule-out and impart? Arch on the green talks about a de minimis showing that suggests probably that wouldn't meet impart. Would that meet rule-out? No, that is the rule-out standard because the rule-out standard has been fleshed out in cases and in regulatory commentary as meaning you must prove that pneumoconiosis did not contribute at least in part or in no part in de minimis part. I mean... De minimis evidence would be enough to over... You're not able to rule out coal mine employment as a cause, even if there's de minimis evidence. That is correct, yes. Arch on the green... Sorry, go ahead. I'm sorry. Go on. I'm sorry. That's okay. I'm going to challenge the being on the phone. But in Arch on the green, we at least seem to acknowledge that de minimis might not be enough to satisfy the impart standard. Maybe there's some room between the two. Well, I mean, Arch on the green does say that, but the problem is the wording they're using to explain the standard they're applying is at least impart, and that's the key language that is used to define the rule-out standard. So, I mean, I think we can... We take it from that. At least I take it from that, that the Arch on the green standard is basically applying the rule-out standard, at least, you know, on the part of the claimant, meaning the claimant can prove legal pneumoconiosis just by showing that coal mine dust played at least some part in his disease. So here, when the ALJ applies the Arch on the green standard to the employer's attempt to disprove legal pneumoconiosis, he's saying that you have to prove that coal mine dust played at least no part, you know, did not play at least any part in the claimant's disease. So, basically, the claimant, or excuse me, the ALJ is applying the rule-out standard to the question of whether legal pneumoconiosis is present. And once you get... Go on. This case is just about the clinical disease, not the legal disease. The clinical disease does incorporate the impart standard, right, or not impart? Well, this case is about the legal disease, not the clinical disease. I got that, but I just meant if it wasn't, if it was about the clinical, because I'm thinking that it's been this collapsing standard is true for clinical. I don't know if you incorporate that at least impart element, yes. So, if it's a clinical case, there's no difference between 1IB and little double I? Yes, I think for clinical pneumoconiosis, that's supported by a reading of the regulation. For legal pneumoconiosis, it's a different animal, because, you know, it's basically a disease that, although it has a basis in medicine, because coal mine dust can cause an obstructive lung disease, it's a terminology that's defined by law and the regulations. And they do that by saying it's coal mine dust has substantially, excuse me, has significantly caused or substantially aggravated one's lung disease. And the way they're implemented, the way Arch on the Green implemented that for a claimant's burden is they say, well, that's satisfied when a claimant shows that coal mine dust caused, you know, his disease, at least in part. So, that's a rewarding rule-out. Can I? This is Joe Gelbanian. So, is there a logical reason, then, just so I follow, that in the rebuttal, there's a difference? The in part comes from 718-203, right? And it's invoked in the rebuttal for clinical, but not legal. And is there a maybe? I mean, it's the language is in B, it's not in A. Is there a logical reason for that? For why it's in clinical and not legal? Right. Is there a logical reason why it should be harder for an employer to rebut clinical than legal? Yeah, I think so, because clinical pneumoconiosis is much more apparent in a claimant's case than or disproven by whether, for lack of a better term, whether a claimant has spots on an X-ray or a CT scan. They're either there or they're not. It's pretty objective. With legal pneumoconiosis, we're talking about obstruction or restriction that may or may not be due to coal mine dust, where you don't really have X-ray or CT scan evidence to prove or disprove it. It's basically going by a physician's opinion about whether that particular obstruction or restriction is due to that. Respond to the question? Yeah, go ahead. Good for you, though. So, I think, going from that sense, it's probably fairly apparent whether or not a claimant is clinical. You're still going to have dueling experts on the question of what's on the X-rays, but that's just a question of, you know, what does this expert interpret this spot on the X-ray as? What does that expert interpret it as? With legal... For what it's worth, I would have thought the opposite, that in fights about medical stuff, it would be more difficult. I mean, I think Judge Nalbese's question's a good one, but I would have thought it would go the other way. What am I missing? Well, I mean... If it's a fight about what the X-rays show, that seems to me to be more important than have a higher standard. Well, I think... Well, but I think the reasoning, though, is that if it's a fight about what the X-rays show, you know, you have to have a good explanation for why that X-ray is not showing what it's showing. It's pretty objective. With legal pneumoconiosis, it's... I don't want to say subjective, but, I mean, it's less well-grounded in, you know, apparent objective evidence because you just have to prove a cause of a, you know, non-visualized impairment in to do that. You just have to rely on medical opinions that posit their own views about what it is and what it does not do to. And I think that's... Is there something in the regulations or guidance somewhere which explains this difference and kind of supports what you're saying? Well, I think you have to... I think the one... Well, yeah, I would say that the explanation would be in 718-201, where it talks about how legal pneumoconiosis is defined as a significantly related to or substantially aggravated cause due to coma, I guess. Now, yes, they have that language in 203, which is what Arch and the Green relied on to say that standard is satisfied by, at least in part. But, you know, I'm not arguing that Arch and the Green should be overruled, but I'm saying that in order to ensure that you get a standard for rebutting legal pneumoconiosis that complies with the director's own arguments... director's own rebuttal of legal, you have to read it in a way that limits it to saying you disprove it by saying it is substantially caused or significantly related to, and not by just saying that it's due at least in part. It's the only way... Okay. Council, this is helpful. We'll give you your full rebuttal, and I'm sure we'll have questions, but this is helpful to start. So why don't we hear from Council for Mr. Young? Thank you very much, Arch. Thank you. Hello. Hello. Am I ready to start? You sure are. You've got five minutes, as I understand it. Yes, sir. May I please the court? I'm Brent Johnson, Greenville, Kentucky, representing the claimant, Mr... I should have lost my claimant's name. Mr. Larry Allen Young. Some factors that may make a difference and help understand what's going on between legal and clinical. In this case, the coal miner, Larry Young, was an underground coal miner for 19 years. He worked in very dusty environments. The ceiling was about 48 inches, I believe, or 42 inches, somewhere along in there. He did very heavy work. He bent over, and during that work, he worked six to seven days a week. I think we got the facts, and he smoked a lot. So why don't you respond to some of the arguments made by your friend on the other side? In this case, the arch on the green case was probably the wrong standard. However, under the facts of this case, as ruled on by the Benefits Review Board, it was harmless error, because in this case, the man had the benefit of a 15-year presumption, having worked more than... He worked, actually, 19 years in the coal miner, possibly more, and he had qualifying values on his breathing studies. And I don't think I wrote that wrong in my brief, but anyway, he had qualifying values saying he was disabled on his breathing studies. That's a factor in determining for this... Council. Council. Can you... Yes. I have a strong suggestion here. You're not listening very well. After every couple sentences, pause. All right? Okay. Otherwise, you're going to get questions. So I've got a question. You said... You started out by saying, it seems like they improperly applied the arch on the green standard here. Is that because you agree with what your friend on the other side just said, that this is about legal pneumoconiosis, and is that the point? Is that why you think there was a mistake? I think it's undisputed that arch on the green was not the standard in this case. It should have been a standard that is based upon the regulations and not a court case. Arch on the green is a case that dealt with a surface miner and an underground coal miner, like my client, who worked in different environments. In the other case, the client was a... I've lost my thought. The client was one who had not worked or did not have both clinical and legal pneumoconiosis. In this case, my client had only legal pneumoconiosis. So that's a factual difference in the case. And I think that's the reason why possibly the wrong standard may have been applied. I don't know that there's anything wrong with the standards. It's a question of the judge may have misapplied that standard in this case. Now, the Benefits Review Board ruled that was error, but it was harmless error, and that's in their opinion. So I think that's... It's not the issue of the standards. It's the issue of the judge misapplying the standard, and he should have applied a different standard, and the VRB said it was harmless error. In this case, I think the factual differences are we have a guy who worked 19 years underground. Arch on the green, I believe, had a surface miner. That's a little difference. It may have some difference in the law as well. The other factors are that in this case, we only have legal pneumoconiosis. In the other case, we have clinical as well as legal. What test would you have us... I'm sorry, this is Judge Riedler. What test would you have us apply then to the legal pneumoconiosis? I think the standard that... Well, the standard of proving disability based upon the test results is the way it's typically established as to whether they meet the presumptions under the law, and that's a big factor because it's a hurdle for the employer to overcome presumptions. Now, as to the issue of what standard, I think each standard will apply, could be applicable in either case. In this case, we have an underground miner, and we have total disability, and he's entitled to benefits. Any mistake was made by the judge, but it was ruled harmless by the Benefits Review Board. The outcome does not change. In this case, the judge decided the case upon the opinions and the evidence as a whole. He decided based upon the totality of the medical opinions, the claimant was totally disabled. My note says I'm out of time here, too. I've got 45 seconds, so I'm going to quickly summarize. No, no, no, you're good. Counsel, you're good. Thank you. We'll hear from the secretary. Thank you. All right. Good afternoon. May it please the Court, my name is Cynthia Liao, and I represent the Director of the Office of Worker Compensation Programs in the Department of Labor. Now, I want to address a question that was just posed about what standard should have been applied here, and the standard that applies is in our regulation at 718.305D1iA, and that says that the party opposing entitlement has to prove the miner does not or did not have legal pneumoconiosis as defined in 718.201. So, if you follow that cross-reference, that's the regulation that talks about this is significantly related to or substantially aggravated by coal dust exposure. Now, this Court in Grove interpreted 718.201 in harmony with 718.203. There was a suggestion in Grove that someone could read the significantly and substantially language as a little stricter than the at least in part language, but in the end, the Court held that they were essentially equivalent, that the claimant still required to prove significant and substantial contribution, but that the claimant can prove it by proving at least in part contribution. So, the Director's reading of Grove is that the standard is still significantly or substantially, but it's not a higher standard than, I guess, at least in part might appear to be. Basically, it just requires that the claimant prove something more than the minimum contribution, something, some kind of material impact by coal dust. So, on the flip side, that's how you determine a rebuttal standard. The employer can rebut legal pneumoconiosis by showing that there's absolutely zero contribution, which is what employer seemed to be trying to do here with Dr. Selby, Dr. Tudor, and Dr. Culbertson, or that, okay, maybe there was contribution, that there was contribution, but it was de minimis. It was so small that it had no... This is Judge Radler. So, your friend on the other side, I think, was making the point that by utilizing the in part standard, that you effectively have dropped this down to the rule-out standard, and you're essentially using the rule-out standard twice, in which case there's really no difference between the first part of the test and the second part of the test. Do you see room between rule-out and not in part? Is that de minimis point you made earlier the difference? So, when I talk about rule-out, what I think it means is that the employer would have to prove absolutely no contribution, even de minimis contribution. So, if you look at the text of the second prong of the rebuttal, it has that kind of language, no part of the minor respiratory or disability was caused by pneumoconiosis. But the first prong is not written that way. It just cross-references back to legal pneumoconiosis. So, whether that's rule-out... Yes. This is Judge Albandian. But my reading of... So, 203, the 203 standard says at least in part. So, the opposite of at least in part would be in no part, which would be the exact same language as the rule-out standard in Part 2. I mean, if 203 is imported into the analysis, then doesn't that mean it's a rule-out standard? It might be. It depends on how... Go ahead. Okay. So, I think it could be. It could be. I think if you follow employer's interpretation that under Groves, the claimant can prove legal pneumoconiosis with even a de minimis contribution, then the flip side of that would be the employer would have to prove no contribution, no part, right? So, that would be a rule-out standard. But I don't think that's the only way to read Groves. I think Groves can be read to mean that the significantly and substantially language is still playing a role. There's still a requirement to prove something more than de minimis, than the break from the claimant. Okay. So, then why don't we just read the reg? Why don't we just read the rebuttal reg? The in part comes from 203, and 203 is only explicitly mentioned in Part B, not in Part A. So, why don't we just look at the language of the reg and say, for legal pneumoconiosis, it's just the substantially related or whatever standard from 201, which is invoked in that part. And in Part B, for clinical, it invokes 201 and 203. But the fact that 203 is not invoked in Part A is consequential, right? I think that's one way the court could get there. I think that might create some tension with Groves and the way that Groves wanted to read 201 and 203 together, even for legal pneumoconiosis. But I think earlier, there was a question about if that would make sense to treat clinical differently. And I think that could make sense because clinical pneumoconiosis is the type of pneumoconiosis that's normally well recognized in the medical community as arising out of coal dust exposure. And so, the causation question for clinical is that. So, that agrees with Island Creek then, right? You're agreeing with Island Creek on that point? I guess so. I thought that could be a way to address the case. Although, I just want to make the point that the rebuttal prong one for legal pneumoconiosis, it's really hard to escape Groves just because the cross-reference is there to 201, which is what Groves is talking about. But in the end, I would agree with... Just imagine Archer on the Green, Groves, whatever you call it, isn't here. What would you recommend? What would the Secretary recommend if we didn't have that case to deal with? We would recommend that the rebuttal standard for legal pneumoconiosis is simply the split of the affirmative standard. So, not significantly, not substantially. But we don't think that's a very... Sorry, significantly and substantially. We don't think that's a super high burden for claimants. We just think it means something more than de minimis, something material. And what's your take on the harmless point? So, we think that the discussion we've been having about this important question on compensation is an important one, but it's not something that's crucial to this particular case. This discussion can be saved for another day, another case where it actually makes a difference. In this case, the ALJ looked very carefully at the three doctors' opinions that employer put forward and found that each of them was not credible. If they had been credible, employer could have rebutted legal pneumoconiosis because they all said that coal dust played no role whatsoever. But because they were found not credible, employer can't rebut legal pneumoconiosis under any standard. And if you look at the ALJ's reasons for finding them not credible, the ALJ... His decision was supported by substantial evidence for all three of these doctors. So, for instance, Dr. Selby thought that he had to find the right pneumoconiosis. That was one of the reasons why he said it wasn't caused by coal dust. But that is in tension with our regulations that say that even a negative chest X-ray doesn't stop a physician from diagnosing legal pneumoconiosis or pneumoconiosis in general. And that kind of reasoning has been affirmed by this court as an acceptable reason to discredit a doctor. That's in the Cumberland River case that's cited in our brief. Dr. Tudor relied very heavily on statistics that generally he thinks it's rare for a coal miner to get lung disease from coal dust. But that contradicts Congress's intent with the 15-year presumption because Congress believed generally that there's such a strong connection between coal dust and lung disease that if a miner spends 15 or more years underground in the mine, his disease is presumed to be caused or related to coal dust. So if an opinion like Dr. Tudor's counsel, um, so thank you for on the irreparable, I mean, on the harmlessness issue. So let me go, let me circle backwards again. And you said, um, with arch on the green, it's, I think I'm paraphrasing you the, there's a reference in 203 to 201. So there's this move in the case that you think hems us in. And I just want to make sure there's no reason to call that dicta is, or do you just think that that's, that's gamesmanship that we really can't escape it that way? Sorry, which part do you think is dicta? I thought, I think I'm quoting you. I think you said earlier, um, there's a part of arch on the green where they, they had referenced 203s reference to 201. And that's what seemed to be a building block of your position that it controls what we do here today. And I'm just trying to make sure that part of arch on the green wasn't dicta. I mean, it's that, you know, does that make sense to you or does not make sense to you? The question? Um, I'm not sure, but I can try to answer it. Um, I thought you, I thought you were saying there was an analytical point in our green that seemed to hem us in here. And I was just wondering if it was an analytical point that was dicta, that's all I was getting at. And, um, maybe I misheard you, but that's, that's what I thought you were saying. So we, I, we think that Groves was interpreting 17.201. So if you're going to try to figure out what the rebuttal standard is, that standard cross-references 201, you have to take into account what Groves said about 201. I guess that's, that's exactly my question. Um, and I know Groves was trying to read 203 with 201, um, but ultimately it was talking about what 201 was. Right. Okay. So what's that? This is Judge Raidler. I just know Bandy was asking about the clause in Section B that references 718.203 with respect to the clinical, but not the legal disease. Yes. And how do you, how do you explain that phrase being in Part B, but not being in Part A? And is that significant? I am not sure off the top of my head why the text is a little different. Um, 203 in general is about the 10-year presumption, which we think applies to clinical pneumoconiosis, but not legal. That might be why it's there, because even in a 15-year presumption case, you have to take into account, um, the presumption, the 10-year presumption. I seem out of time, so I don't want to keep going if, uh, that's a stop. No, we, I noticed that, but you've been helpful. Um, Judge Malbandi, do you have any other questions? I, I do not. Um, I, Judge Raidler, do you? Okay. Um, thanks very much. We really appreciate your help. Thank you. And so, I think we've got, um, three minutes of rebuttal for the Island Creek lawyer. Yes. Thank you. Uh, just a few points here. Um, first of all, I think Judge Malbandian's explanation about how 203 talks about, at least in part, and is basically only under one prong, which relates to clinical pneumoconiosis, I think that resolves what I would see as a problem in Arch on the Green's reasoning, in that it, Arch on the Green treats the substantially contributing co-op standard that talks about legal pneumoconiosis as being satisfied by that at least in part standard. Well, but I think the at least in part standard relates more directly to clinical pneumoconiosis and not at all to legal, because of that subsection we talked about. And as Ms. Liao pointed out, that's, that very 203 section is talking about the 10-year presumption, which is a presumption that has everything to do with clinical pneumoconiosis, nothing to do with legal. So, I think that's how you explain the differential here, that at least in part standard is there talking about clinical pneumoconiosis, and which means that the legal pneumoconiosis standard, both on rebuttal and in establishing, should be covered by a substantially contributing cause, or at least in part. Um, one second, Judge Razor. This is Judge Razor. Can I ask you one question about that? Sure. So, this arising of coal mine employment phrase is included in 17201A1 and A2. So, for both clinical and legal, they both have the requirement of arising out of coal mine employment. Yes. And in Section B, and in Section B is where we get the significantly related or substantially aggravated by standard from. Right. So, in that context, the arising out of coal mine employment seems to relate specifically to the significant or significantly aggravated. You probably could make the argument that it is the standard. R-China Green has now incorporated the lower standard, but in looking at 201, they use the same phrase to describe each of the disease, and it suggests they should maybe be treated in parallel rather than broken up the way you're suggesting. Well, except that all forms of pneumoconiosis, whether clinical or legal, I mean, in order to be compensable under this Blackwell Benefits Act, they have to arise out of coal mine dust. Otherwise, it's not coal I don't think that was meant to imply that each one has this, you know, at least in part standard. I think it's just meant to show that there's got to be some connection between coal mine dust for this to be compensable at all. If I could just add just one or two quick points here. It seems to me that we all kind of agree that the standard was misapplied. Ms. Treon said that explicitly. Ms. Liao pretty much conceded that the rule-out standard is the same as the at least in part green applies. I would think that supports my point. And then just the final point, this harmless error thing. You have to, the standard matters when you're trying to determine the credibility of an expert. I mean, if you're looking at experts like Dr. Tudor, for example, who did rely quite a bit on statistics to show that it's more likely than not due to coal mine dust, well, if you're trying to see whether he can prove beyond any doubt that coal mine dust played absolutely no role in impairment, well, statistics might not get you there. But if you're just trying to see whether he can prove that coal mine dust did not significantly contribute or substantially aggravate one's disease, his reasoning, I think, crosses the bar. At least it's a question the ALJ needs to resolve under the correct standard to see whether it does meet the employer's rebuttal standard. And that's what I think needs to be done on remand in this case. And I am out of my rebuttal. All right. Thanks to all three of you. We are adjourned.